# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO
## Judge Daniel D. Domenico

Case No. 1:20-cv-01155-DDD-STV

ADRIANA GUERRERO BUTANDA,

    Plaintiff,

v.

CHAD F. WOLF, *in his official capacity as Acting Secretary of U.S. Department of Homeland Security*;
KENNETH T. CUCCINELLI, *in his official capacity as Acting Director of U.S. Citizenship and Immigration Services*; and
LAURA ZUCHOWSKI, *in her official capacity of Director of the U.S. Citizenship and Immigration Services' Vermont Service Center*;

    Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Plaintiff Adriana Butanda is a citizen of Mexico who resides in Colorado. She does not have legal status to be in the United States. In April 2018, however, she applied to the United States Citizenship and Immigration Services (USCIS) to receive what's known as a "U-Visa," which, if granted, would entitle her to temporary-resident status. She also submitted two applications to USCIS for employment authorization, one seeking authorization based on her U-Visa application and the other seeking employment authorization in anticipation that USCIS would place her on the U-Visa waitlist.

To date, USCIS has not processed Ms. Butanda's U-Visa or employment-authorization applications. Figuring two years was too long to wait, Ms. Butanda filed this suit. She asserts five claims for relief. Her

first two claims, which are premised on the Administrative Procedure Act and the court's power to issue writs of mandamus, respectively, assert that Defendants have unreasonably delayed the decision whether to place Ms. Butanda on the U-Visa waiting list. Her third and fourth claims, which also invoke the APA and the court's mandamus power, assert that Defendants have unreasonably delayed the determination whether Ms. Butanda is entitled to employment authorization. Her fifth claim seeks attorneys' fees under the Equal Access to Justice Act.

Defendants move to dismiss Ms. Butanda's complaint for lack of jurisdiction and for failure to state a claim. Because the pace of adjudication of a U-Visa and an employment authorization are discretionary decisions that Congress has deprived federal courts of jurisdiction to review, *See* 8 U.S.C. § 1252(a)(2)(B)(ii), the court grants Defendants' motion and dismisses Ms. Butanda's suit.

## BACKGROUND

### I.  U Visas

Through the Immigration and Nationality Act, Congress empowered the Executive Branch to oversee the process and conditions of admitting aliens into the United States. *See* Pub. L. No. 82-414, 66 Stat. 163 (1952). Among other things, the Act charges the Secretary of the Department of Homeland Security with the duty to "establish such regulations; prescribe such forms of bond, reports, entries, and other papers; issue such instructions; and perform such other acts as he deems necessary for carrying out his authority under" the Act. 8 U.S.C. § 1103(a)(3). The Secretary has in turn delegated much of his authority to administer immigration to USCIS. *See* 8 C.F.R. § 2.1.

Administration of the U-Visa program, which garners its name from

the subparagraph at which it is codified—8 U.S.C. § 1101(a)(15)*(U)*, is among USCIS's delegated responsibilities. An alien may be entitled to U-Visa status if (1) "the alien has suffered substantial physical or mental abuse as a result of having been a victim of criminal activity"; (2) "the alien . . . possesses information concerning criminal activity"; (3) "the alien . . . has been helpful, is being helpful, or is likely to be helpful to a Federal, State, or local law enforcement official, to a Federal, State, or local prosecutor, to a Federal or State judge, to the Service, or to other Federal, State, or local authorities investigating or prosecuting criminal activity"; and (4) "the criminal activity . . . violated the laws of the United States or occurred in the United States (including in Indian country and military installations) or the territories and possessions of the United States." 8 U.S.C. § 1101(a)(15)(U)(i). Aliens approved for a U-Visa are entitled to temporary resident status and employment authorization. 8 U.S.C. § 1184(p)(3).

No statutory provision requires USCIS to approve a U-Visa application, even if the application meets the statutory criteria. Congress has instead committed the decision of when to admit a U-Visa application—and the process for making that decision—to USCIS's discretion. *See* 8 U.S.C. § 1184(a)(1) ("The admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the Attorney General may by regulations prescribe  USCIS has, through its delegated authority to promulgate implementing regulations."). USCIS under that delegated authority has said that it "will approve" a U-Visa application if the applicant meets the statutory definition in Section 1101(a)(15)(U). 8 C.F.R. § 214.14(c)(5)(i). But importantly, Congress has limited USCIS's authority to approve U-Visas by imposing a 10,000-visa-per-fiscal-year cap: "The number of aliens who may be issued visas or otherwise provided status as nonimmigrants under section

3

1101(a)(15)(U) of this title in any fiscal year shall not exceed 10,000." 8 U.S.C. § 1184(p)(2). This means that depending on the number of U-Visa applications in a given year, many meritorious applicants may not receive a U-Visa.

And the reality is that there are many more U-Visa applications than U-Visas available. To accommodate these excess applications, USCIS and the Department of Homeland Security created a U-Visa waitlist: "All eligible petitioners who, due solely to the cap, are not granted U–1 nonimmigrant status must be placed on a waiting list and receive written notice of such placement." 8 C.F.R. § 214.14(d)(2). An applicant's priority on the wait list is "determined by the date the petition was filed with the oldest petitions receiving the highest priority." *Id.* Once on the waiting list, a U-Visa applicant is granted deferred action of any deportation proceedings. *Id.*

As for work authorization, Congress has authorized the Department of Homeland Security to grant work authorization to aliens with pending U-Visa applications: "The Secretary may grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U) of this title." 8 U.S.C. § 1184(p)(6). The implementing regulation for Section 1184(p)(6) provides that "USCIS, in its discretion, may authorize employment for such petitioners and qualifying family members." 8 C.F.R. § 214.14(d)(2).

The upshot of these statutes and regulations is that the U-Visa process proceeds in three stages. At stage one, a U-Visa applicant whose application has not been processed by USCIS is not entitled to temporary resident status, deferred action, or work authorization. At stage two, a U-Visa applicant whose application has been processed and meets

4

the statutory criteria will be placed on the waitlist. A stage-two applicant is entitled to deferred action and is eligible for work authorization. At stage three, a U-Visa applicant whose application has been approved is entitled to temporary resident status and employment authorization.

## II. Ms. Butanda's Suit

Ms. Butanda is at stage one of the U-Visa process. She filed a U-Visa application and requests for work authorization in April 2018. To date, USCIS has not processed her applications. She thus seeks, through this suit, to compel USCIS to adjudicate her applications. Defendants respond that its pace of adjudication of U-Visa applications and work authorization are discretionary matters; since Congress has prohibited judicial review of such discretionary matters, then, they move to dismiss for lack of subject matter jurisdiction.[1]

## ANALYSIS

Defendants move to dismiss Ms. Butanda's complaint under Federal Rule of Civil Procedure 12(b)(1). Defendants attack the complaint on its face. *See Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003) (noting that 12(b)(1) motions take two forms: facial attack and attack based on evidence outside the complaint). The court will grant Defendants' motion if the allegations in the complaint, taken as true, fail to present a valid basis for subject-matter jurisdiction. *See id.*

### I. Jurisdiction Over Discretionary Immigration Decisions

Ms. Butanda invokes two bases for jurisdiction: the Administrative

---

[1] In the alternative, Defendants move to dismiss for failure to state a claim under Rule 12(b)(6). But because the court lacks subject matter jurisdiction over Ms. Butanda's complaint as explained below, the court need not and does not rule on this alternative argument.

5

Procedure Act and the All Writs Act.

The Administrative Procedure Act generally permits a court to step in when an agency fails to act. A reviewing court must "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Relief under Section 706(1) is limited to an agency's failure "to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). Section 706(1)'s "limitation to required agency action rules out judicial direction of even discrete agency action that is not demanded by law." *Id.* So "when an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be." *Id.* at 65. Section 706(1) encompasses actions mandated by statute and by regulation. *Id.*

The All Writs Act, 28 U.S.C. § 1651, similarly empowers this court to compel an agency, usually through a writ of mandamus, to carry out some "specific, unequivocal command" required of it by law. *Id.* at 64. A court may issue a writ of mandamus ordering an agency to act only if the act requested is "precise" and "definite," "about which [an agency] had no discretion." *Id.* A writ of mandamus may issue, in short, for only ministerial, non-discretionary duties. *Id.*

There are two additional limitations on this court's jurisdiction important for this case—one in the Administrative Procedure Act, the other in the Immigration and Nationality Act. First, the APA precludes review of "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). This limitation is the mirror image of Section 706(1)'s requirement that the court can compel an agency to act

6

when it has failed to take a discrete mandatory action. Second, the Immigration and Nationality Act strips this court of "jurisdiction to review any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). The limitation in Section 1252(a)(2)(B)(ii) is limited to decisions or actions committed to agency discretion by statute only; it does not apply to actions made discretionary by regulation alone. *Kucana v. Holder*, 558 U.S. 233, 246 (2010). "As courts have recognized, this [Section 1252(a)(2)(B)(ii)]'s meaning is refreshingly free from ambiguity and its terms are pellucidly clear: It means that courts are precluded from reviewing *any* discretionary decision or action of USCIS." *Safadi v. Howard*, 466 F. Supp. 2d 696, 698 (E.D. Va. 2006) (collecting cases).

### II.    The U-Visa Waitlist (Claims One and Two)

In her first and second claims for relief, Ms. Butanda challenges the failure of Defendants to as yet process her application for a U-Visa and place her on the U-Visa waiting list created by 8 C.F.R. § 214.14(d). The court lacks jurisdiction over this claim under 8 U.S.C. § 1252(a)(2)(B)(ii).

Congress has entrusted the timeline for processing U-Visa applications to the discretion of the Attorney General. Nowhere in the Immigration and Nationality Act has Congress prescribed a timeframe for processing U-Visa applications. To the contrary, the Congress gave the Attorney General the authority to devise the system for processing applications—and ultimately granting or denying them. *See* 8 U.S.C. § 1184(a) ("The admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the Attor-

7

ney General may by regulations prescribe."). The lack of a Congressionally mandated timeline and the concomitant grant of discretion to determine the "time" and "conditions" of admitting U-Visa applicants renders the pace of adjudication non-reviewable under Section 1252. *See Beshir v. Holder*, 10 F. Supp. 3d 165, 173 (D.D.C. 2014) (holding that authority to promulgate regulations for process of adjustment of status under 8 U.S.C. § 1255(a) "grant discretion not only over the decision to adjust an alien's status but also over the promulgation of regulations to create the process by which an alien's status may be adjusted"); *Orlov v. Howard*, 523 F. Supp. 2d 30, 35 (D.D.C. 2007) ("In the absence of statutorily prescribed time limitations or statutory factors to guide USCIS in crafting regulations for the adjustment process, it is difficult to determine how the pace of processing an application could be anything other than discretionary."); *Safadi*, 466 F. Supp. 2d at 699 ("The complete absence of any statutory time limits on the processing of adjustment applications" indicates Congress intended the pace of process those applications is wholly discretionary); *see also Mahaveer, Inc. v. Bushey,* 2006 WL 1716723, at *3 (D.D.C. June 19, 2006) (explaining that "by not providing any specific factors to guide the Attorney General in crafting such regulations [to govern the conditions of nonimmigrants' entry into the United States], it can fairly be said that Congress intended the Attorney General to have full discretion in his or her decision making").

This position finds further support in the fact that Congress knows how to, and often does, prescribe timelines for nonimmigrant admission when it wants to. For example, Congress requires the Attorney General to "provide a process for reviewing and acting upon petitions" for nonimmigrant admission filed by an alien employed by certain American corporations "*within 30 days* after the date a completed petition has been

filed." 8 U.S.C. § 1184(c)(2)(C) (emphasis added). Likewise, under certain conditions, when an alien seeks to be admitted as a non-immigrant to work in the motion picture or television industry, Congress has required the Attorney General to adjudicate that alien's petition "in no more than 14 days." *Id.* § 1184(c)(6)(D). Indeed Section 1184, let alone the rest of the Immigration and Nationality Act, is rife with Congressionally mandated deadlines. *See, e.g., id.* § 1184(c)(3)(flush language); *id.* § 1184(6)(B); *id.* § 1184(d)(1). But for U-Visa applications, Congress has mandated no timeline. It has instead delegated the pace of adjudication to the sole discretion of the Attorney General in Section 1184(a). *See BFP v. Resolution Tr. Corp.*, 511 U.S. 531, 537 (1994) ("It is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another."); *see also Beshir*, 10 F. Supp. 3d at 176 ("The absence of a congressionally-imposed deadline or timeframe to complete the adjudication of adjustment applications also supports the conclusion that the pace of adjudication is discretionary and thus not reviewable."). This delegation renders U-Visa pace of adjudication nonreviewable under Section 1252(a)(2)(B)(ii).

Ms. Butanda makes two primary counterarguments, neither of which are availing. She first contends that the pace of adjudication isn't a "decision or action" within the ambit of Section 1252(a)(2)(B)(ii). Doc. 16 at 5. She concedes that the ultimate decision whether to grant or deny a U-Visa petition is discretionary, but argues that the adjudication leading to that discretionary decision is a mandatory duty. *Id.* The statutory provision Ms. Butanda rests this argument on is 5 U.S.C. § 555(b), which in relevant part says that "with due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented

9

to it." The flaw in this argument is that Section 1252 applies specifically to the decision at issue here because Congress has failed to provide any specific timeline for adjudication, leaving the pace of the process up to Defendants' discretion. In other words, what Ms. Butanda asks the court to do is to require USCIS to make its decision. But deciding when to decide is a discretionary act that Section 1252 forbids the court from overruling.

The terms "decision" and "action" in Section 1252(a)(2)(B)(ii) necessarily "encompass[] *any* act or series of acts that is discretionary within" the process of reviewing a U-Visa application. *Safadi*, 466 F. Supp. 2d at 699. And absent a Congressional mandate to act within a certain period, the timeframe for deciding a U-Visa application is one of those discretionary acts within the ambit of Section 1252. So while the court agrees with Ms. Butanda that USCIS is required "to conclude [the] matter," Doc. 16 at 10, the court has also been divested of the authority to tell USCIS when it must do so. Were it otherwise, this Article III court would usurp the delegated authority to administer the U-Visa Program that Congress conferred on the Executive. *See Norton*, 542 U.S. at 66 (Congressional prohibitions on review of discretionary decisions of the Executive are meant "to protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve").

Ms. Butanda's second counterargument is that several district courts have concluded that Defendants have a non-discretionary duty to adjudicate U-Visa applications. Doc. 16 at 7. But none of the decisions cited by Ms. Butanda discuss the jurisdictional bar in Section 1252(a)(2)(B)(ii). *See Berduo v. Cissna*, No. CV 9:18-00082-MBS, 2018 WL 5013593 (D.S.C. Oct. 15, 2018); *Mata v. Cissna*, No. CV 2:18-

00073-MBS, 2018 WL 5013838 (D.S.C. Oct. 15, 2018); *Gutierrez v. Cissna*, No. CV 2:18-00076-MBS, 2018 WL 5013642 (D.S.C. Oct. 15, 2018); *Rodriguez v. Nielsen*, No. 16-CV-7092 (MKB), 2018 WL 4783977 (E.D.N.Y. Sept. 30, 2018). Those decisions thus are not persuasive to the court.

This court lacks jurisdiction to review or compel Defendants' pace of adjudication of Ms. Butanda's U-Visa application.

### III.   The Work Authorization Requests (Claims Three and Four)

Ms. Butanda's third and fourth claims for relief ask the court to compel Defendants to adjudicate her requests for work authorization while her U-Visa application is pending. For similar reasons, the court lacks jurisdiction over these claims under 5 U.S.C. § 702(a)(2) and 8 U.S.C. § 1252(a)(2)(B)(ii).

The statutory provision at issue, 8 U.S.C. § 1184(p)(6), is discretionary on its face: "The Secretary *may* grant work authorization to any alien who has a pending, bona fide application" for a U-Visa. *Id.* § 1184(p)(6) (emphasis added). This provision is permissive, not mandatory; it doesn't require Defendants to do anything. The statute requires no "discrete agency action," *Norton*, 542 U.S. at 64, that would bring it within the ambit of Section 706(1), and thus the court lacks jurisdiction over any attempt to compel work authorization under 5 U.S.C. § 702(a)(2) and 8 U.S.C. § 1252(a)(2)(B)(ii).

This is true, too, of Section 1184(p)(6)'s implementing regulation. 8 C.F.R. § 214.14(d)(2) expressly states that the decision to grant work authorization pending a U-Visa application is discretionary: "USCIS, *in its discretion, may* authorize employment for such petitioners and qualifying family members." *Id.* § 214.14(d)(2) (emphasis added). At face

11

value, then, the court is not permitted to direct action under either Section 1184(p)(6) or Section 214.14(d)(2) under Section 706(1) as interpreted by the Court in *Norton*.

Ms. Butanda again argues that, while the ultimate decision to grant or deny work authorization is discretionary, the decision to make that decision is not. Doc. 16 at 9. Ms. Butanda's argument is largely premised on *Rodriguez*, 2018 WL 4783977 at *11. But that decision, in turn, relies on *I.N.S. v. St. Cyr*, 533 U.S. 289 (2001), which arose in the distinct and inapplicable context of habeas-corpus jurisdiction for immigration proceedings. *See St. Cyr*, 533 U.S. at 298. Indeed, the Supreme Court applies a different, heightened rule for jurisdiction-stripping provisions in habeas cases not applicable here. *Id.* And neither Ms. Butanda nor the *Rodriguez* court have pointed to any provision of the Immigration and Nationality Act that makes the pace of adjudication of a U-Visa work authorization non-discretionary.

A recent decision of the Fourth Circuit in *Gonzalez v. Cuccinelli*, No. 19-1435, 2021 WL 127196 (4th Cir. Jan. 14, 2021) is far more persuasive. There, the court held that the pace of adjudication of an application for work authorization under Section 1184(p)(6) is discretionary and thus not reviewable under Section 706(1). *Id.* at *6. The court explained "nothing in Section 1184(p)(6) requires the agency to do anything." *Id.* This lack of a mandatory duty combined with a hallmark of immigration law—"protecting Executive discretion"—led the court to conclude that federal courts lack jurisdiction to compel adjudication of applications for work authorization. *Id.*[2]

---

[2]  In *Gonzalez*, the court also ruled that a challenge to the pace of adjudication of a U-Visa application was "reviewable." 2021 WL 127196, at *12 n.10. The court relegated that holding to a footnote that did not discuss or consider the jurisdictional bar to review in § 1252(a)(2)(B)(ii).

So too here. Congress has entrusted the process for granting work authorizations to USCIS. That delegation of discretion means the court lacks jurisdiction over Ms. Butanda's Third and Fourth Claims for relief.[3]

## CONCLUSION

The court **GRANTS** Defendants' motion to dismiss. Doc. 12. The clerk is directed to enter judgment in favor of Noble and terminate the case.

Dated: February 1, 2021.    BY THE COURT:

_____
Daniel D. Domenico
United States District Judge

---

The court instead based its holding on the fact that Congress mandated that the agency pass implementing regulations of the U-Visa program and that the agency committed itself in those regulations to place U-Visa applicants whose applications were denied based "due solely to" the 10,000-visa cap. *See id.* (citing 8 C.F.R. § 214.14(d)(2)). This holding is not applicable here. Ms. Butanda doesn't allege that she has been denied solely because of the cap. She instead alleges that USCIS hasn't yet considered her application whatsoever. Her complaint thus does not come within the mandate of Rule 214.14(d)(2), even if that regulation is correctly understood to be reviewable despite the limits of Section 1252.

[3] Because Ms. Butanda's fifth claim for relief seeking attorneys' fees under the Equal Access to Justice Act is derivative of her first four claims for relief, the court dismisses that claim as well.